The first case that the court will hear this morning is Schmidt v. Foster, and we are ready to hear from Ms. Feit. Thank you, and may it please the court. Under AEDPA, the question is not whether the Supreme Court has clearly established a rule in a case just like this one. There are two questions. First, what is the rule that the Supreme Court has clearly established? And then, did the state court unreasonably apply that rule to the particular facts of this case? So I want to be very clear here about the rule and about how that rule applies to these particular facts. Are there any other states in the Union that have Wisconsin's unusual provision for this? I'm not sure I understood your question. Sorry, Your Honor. Well, ex parte hearings and so forth. Well, what happened here is not typical for Wisconsin, just as it wouldn't be typical in any other state. It was sort of an ad hoc procedure created by the judge. You know, he decided that he wanted to hear more evidence on an evidentiary issue that was being argued at this hearing. The provocative aspect of it, does that occur in other states as well? As far as reduction from first degree to second degree murder? I think it is fairly common, although I wouldn't know, Your Honor. But many states have some sort of heat of passion or adequate provocation defense that mitigates first degree intentional homicide. How do we compare it to? Perhaps, but I would have to look into that and submit something later on what other states have available. But I gather there are probably two things here. One, if it's really completely new, then why does the Supreme Court have a rule? But if it's not, if it's actually simply a way of resolving an evidentiary issue, the Supreme Court has plenty of rules about what amounts to a trial. And the reason AEDPA is there is to prevent freakish misfunctions of the adversary system. So as I understand it, there's a threshold question that any Wisconsin judge has to answer, which is, is there any evidence in the record that would allow this adequate provocation matter to go before the jury? Can you say something about what counsel might have understood that to require? Because it seems that that's what the judge was trying to figure out. Was there enough evidence to even proceed with this? Sure, and everybody agrees here that it's a very low burden. It's the some evidence standard. It's not the burden of the defendant to prove that, in fact, there was adequate provocation, only that there is some evidence of adequate provocation. If there's some evidence, then it is the state's responsibility to prove beyond a reasonable doubt at trial that it doesn't meet the legal standard for adequate provocation. So let me focus on, and then I'll go to Judge Rover, one thing. So I take it that if the lawyer had been permitted to speak at this odd in-chambers proceeding, the lawyer, in your view, should have said to the judge, you have heard enough evidence to move ahead with this. The lawyer should somehow and also perhaps have saved Mr. Schmidt from going around Robin Hood's barn with his account of all the things that have been happening in his life lately. The judge was asking him a legal question he didn't understand, because, of course, we don't sit to correct errors of state law. But if the lawyer had been acting effectively, the lawyer could have done something. I mean, if the judge had permitted the lawyer to participate, there are a lot of different ways this could have gone. Certainly, lawyers generally participate in evidentiary hearings. An advocate attorney like a defense counsel uses the questioning of their client to frame the narrative of their case, to advocate for, to keep things on track to meet the legal burden. But, honestly, there are many different ways this proceeding could have gone other than how it went. The judge could have called a recess, could have put something off for a different date. The judge could have spoken to Mr. Schmidt personally. And discussed the possibility of a waiver. I don't know that he would have obtained that waiver. Certainly not a waiver for a hearing that would happen immediately. But what the judge did do was at, in the middle of this hearing, on this extremely important evidentiary in this case, evidentiary issue, is take Mr. Schmidt back into chambers to question him personally without his attorney able to participate. Under the bizarre circumstances here, Schmidt provided the court with an affidavit under seal, assisted by counsel in lieu of the hearing, because the Wisconsin Court of Appeals decision suggests that there was another way for Schmidt to present this evidence with assistance of counsel and still keep it from the prosecution. Well, he certainly wasn't invited to do that. That's not the procedure that happened. We would be having a very different question, and I probably would not be before this court. But that would be, it would probably, presumably alleviate the systemic concern if he had gone back with counsel and produced an affidavit. But again, we're looking at the procedure that did happen, where we have a defendant shortly before trial on first-degree intentional homicide being questioned by the judge about the homicide, about what he was thinking when he committed homicide. And so the potential for prejudice was incredibly high. And, you know, throughout the briefing in this case, we've really focused on the potential for prejudice on the particular evidentiary issue that the judge was looking at, which was a critical evidentiary issue. But beyond that, this is the judge that would be presiding over his trial in about a month and a half, hearing the circumstances of his understanding of how the homicide occurred. And it's also the judge that would be presiding over his sentencing. And so, you know, if we— So I thought your point was a simple one, that this was the critical issue in the case, and the judge resolved it in a non-adversary setting. Yes. The critical issue in the case, now, the issue of adversary versus non-adversary at this point in the case has become pretty important. The Supreme Court has never said that a critical stage is limited to a hearing where an adversary is present. It has certainly used the word adversarial as an adjective, part of the adversarial process, the adversarial criminal case. It has also used the word adversarial in describing— like almost as a synonym for material or consequential, like in Gerstein v. Pugh, where the court said that that was not an adversarial proceeding where— or sorry, it was non-adversarial where the court is only looking over the allegations to see whether there's probable cause. In that case, presumably the prosecutor is in the room at that probable cause hearing. So, again, they're not using the word adversarial to talk about who's in the room right there. They're talking about adversarial to refer to the role of this particular proceeding in the case. And in that sense, this was absolutely an adversarial proceeding. This was part of the adversarial case. Mr. Schmidt was confronted by the legal process in the form of direct questioning by the trial judge about the crime that he was about to go to trial on. Ms. Feit, let me ask you a question. Can you identify any Supreme Court case where it has not been the case that there's been some representative of law enforcement in the room? I mean, the court has always rooted the right to counsel in confrontation by law enforcement, and it's used the word adversary. And you're saying that that's not necessary to the cases, but can you identify any case in which the court has recognized the right outside of the adversarial setting? Sure, and I'd like to make two points here. So, first, there are two cases where there was no adversary in the room, and the majority panel opinion pointed out Estelle and also Geters. But beyond that, the cases, generally there is an adversary in the room at a criminal hearing because a prosecutor and a defense attorney are both in the room at a hearing. But in Ashe, the Supreme Court said that a critical stage is a proceeding where the defendant is facing the legal process or his adversary, and there's the potential for prejudice. And then it went through a few cases to illustrate what it was saying, and it referred to Hamilton specifically as a case where the defendant was confronted by the legal process, and it contrasted that with Messiah and Coleman, where the defendant was confronted by the professional adversary. Again, in Hamilton, presumably there is a prosecutor in the room, although I've re-read Hamilton and the prosecutor isn't mentioned. And that's true in many of the Supreme Court's critical stage cases, including not just Hamilton, an arraignment case, and a couple of other arraignment cases. But if you look at the guilty plea hearing cases, again, there's no mention of the prosecutors because the conversation that matters, where there's the potential prejudice, is going on between the judge and the defendant. And so it's really about the confrontation with the legal process in all of those cases. Although, again, usually there is a prosecutor in the room, but in both Geters and Estelle there is none. Estelle, the psychiatrist, the court clearly identified as a representative of the state, and the critical stage there was the interview with the psychiatrist that the defendant had not had the opportunity before walking into the cell and submitting to the examination. The court clearly identified that as the critical stage because the defendant hadn't had the opportunity to consult with counsel. And Geters isn't a critical stage case. That's not a case where the state had to either ensure that the defendant had counsel during the overnight recess or that he had waived the right. It was just an entirely different situation. So I'd like to respond to both of those. With Estelle, the Supreme Court did not identify the psychiatrist as an agent of the state in Estelle. Estelle involved both a Fifth Amendment issue and a Sixth Amendment issue. And in talking about the Fifth Amendment issue, it says that the prosecutor used the psychiatrist who had been appointed by the court to evaluate competency. It used that psychiatrist as an agent of the state at trial, which is why he should have received his Miranda warnings before talking to that psychiatrist. It did refer to at one point it says that the defendant there was faced with the adversary system when he spoke to the psychiatrist. The exact same thing is true in this case. He also said that the psychiatrist was not looking out for his best interests, and the same is true in this case. Certainly the judge, Judge Desjardins in this case, was not acting as the adversary in the sense that he was taking on the role of the prosecutor, but he wasn't looking out for Mr. Schmidt's best interests either. He wasn't his advocate. He wasn't his attorney. It wasn't his job to assist his client and help him frame his narrative. in a way that would assist the legal case they were making. Moving for a second away from critical stage and going to prejudice, your position isn't that the defendant didn't have enough opportunity to say what he wanted to say. It's that perhaps he said too much. Is that what caused the prejudice here? Well, perhaps he said too much. And that is in discussing the fact that I do believe there was actual prejudice in this case. Why don't you point to what you consider the actual prejudice in the case? Okay, but first I just want to, I will, but can I get out that it is a structural error? So we're talking about potential for prejudice. But the actual prejudice is really Ferguson versus Georgia is really probably the best case to talk about the sort of prejudice we're talking about, which is where the defendant is talking and rambling in a way he does not understand the legal standard. Well, isn't it the case, I mean, just to focus this, the judge seems to keep trying to ask him, what was your state of mind? Because the judge understands that to be the legal issue that Wisconsin law creates. Correct. And Mr. Schmidt doesn't have the faintest idea that this is a legal question. So he's talking about, you know, building things and what he did the last few days and things that aren't focusing. And so there's a mismatch between the judge's questions and Mr. Schmidt's answers, which winds up hurting Mr. Schmidt. Absolutely. And it hurts Mr. Schmidt in a couple of ways, both by just adding a lot of extraneous information that confused the issue and then by, frankly, adding a lot of information that was really, really negative toward his case and invited the trial judge and also invited. Do you envision a counsel would be objecting to the inquiry, specific inquiry by the judge in this setting if the counsel were there? Is that a way to avoid the prejudice? Well, if he had counsel at the proceeding, counsel should be able to do everything that defense counsel does. Well, tell him to focus on what the ‑‑ explain what the judge is asking. Sure. So he talks about the provocation, which is a pretty low bar, actually, as I understand it, under Wisconsin law. It doesn't require, you know, too much immediacy in time. It doesn't require. Correct. Isn't it correct, though, that the way this odd hearing wound up happening was that the judge had said, we need to have a hearing on whether the defense can tie the earlier events to the shooting itself. I mean, the state's big concern that led to this hearing was that the defense wanted to go back weeks, months, and years in the marital relationship, right? And the judge and the prosecutor were both understandably a little bit skeptical about how you try such a case practically, and that's why we get into this whole thing. But I was struck by the trial judge's statement that the question is whether the defense can tie earlier events quite tightly to what the judge called the incident, which seems to put a pretty heavy burden on the defense and one that requires a good understanding of both the facts and the legal standard. That is correct. And we do not know what would have happened if he had not created this ad hoc procedure. You know, he did not make any sort of ruling before he heard the evidence. He wanted to hear that evidence first. But it may be that either he would have ruled against the defense, and that would have been reversed on appeal under state law. Or, you know, we just don't know what would have happened. What did happen is that he brought Mr. Schmidt back, and on the basis of what he said about his state of mind at the time of the murder, in addition to lots of other things that, again, went against his position quite thoroughly, he ruled that there was no adequate provocation. And the court of appeals, the Wisconsin court of appeals, looked at the case the same way, discussing in a lot of detail what Mr. Schmidt had said back at that in-camera proceeding and found that there was no adequate provocation and essentially said that the murder appeared to be premeditated. Well, hold on. I'm sorry. Thank you. Go ahead. I mean, of course the hearing would not have been held if the prosecution had not objected to the admission of Schmidt's adequate provocation evidence. I mean, doesn't that make it an adversarial proceeding, the fact that the whole point was to address the state's challenge to this evidence and this defense? Yes, Your Honor. They had objected both to the admission of the evidence, and they had filed a brief specifically arguing that he should not be allowed to present the defense of adequate provocation because all of the surrounding evidence shows that he was not adequately provoked. And that all occurred before this hearing, which, you know, both parties, the judge, the transcript even makes reference to victim's family in the audience. This is a normal adversarial hearing with one part of it involving the judge taking evidence in chambers. I'm sorry. Judge Ketter? Isn't it also the case, though, that the Wisconsin Court of Appeals observed that Mr. Schmidt was successful in establishing the subjective prong of the adequate provocation defense? In other words, his failure was on the objective prong. Correct, yes. And at least according to footnote eight in the Wisconsin Court of Appeals opinion, the state, you know, stipulates to that. So I read the Wisconsin Court of Appeals opinion as just saying on the objective prong, the facts, they just don't amount to a demonstration of adequate provocation. That's correct, and it's the facts as adduced at this hearing at which he was denied the right to counsel. And so the state court's finding on that particular matter of state law really can't be divorced from the constitutional violation here because even though it's the objective prong, it was looking at the words out of Schmidt's mouth about all the circumstances of his life and his marriage and what happened at the day as he told the judge on February 10th at that hearing. Ms. Veit, assume there's a critical stage here and deferring to or looking at what the Wisconsin court said, that Mr. Schmidt did receive some assistance of counsel through the offer of proof, through the recess where the client was able to talk to his lawyer about the offer of proof, where the client came back after that recess and was a little more directed. What is the clearly established Supreme Court precedent that you are relying on that says that he did not receive effective assistance of counsel? Because unlike Cronick and some of the other cases, this is not a complete deprivation of counsel. Well, any time you're looking at, in terms of what Supreme Court case, certainly Cronick is one of them. But that was a complete deprivation, and here, if you look at the entire evidentiary hearing, it was not a complete deprivation of counsel because he did have the opportunity to confer with his lawyer, the judge was clearly looking at the offer of proof that the lawyer had consulted with his client about. I know he hadn't read it, but based on the information that's in it, you can tell he talked to his lawyer about it before submitting it. Well, in every critical stage case, we're looking at the moment where there was no counsel. And in all of those cases, we don't have Supreme Court cases where the lawyer goes to Mexico and doesn't come back. There's some portion of the case that is a critical stage that the lawyer misses, and sometimes that's a short portion of the trial, sometimes that's a single hearing. So are you saying that the critical stage is just the portion when the lawyer wasn't participating, or was it something bigger as in the whole evidentiary hearing? The critical stage is something bigger, but the deprivation of counsel only occurred during the in-camera procedure. But the fact that the lawyer submitted written submissions and participated in arguments before that does not detract from the denial of counsel during this critical portion where the defendant was being directly confronted by the trial judge. I would have thought the Ferguson case is a pretty good response, where Ferguson is about sentencing, right? The defendant is speaking for himself, right? Correct. And was required to speak for himself, which was held unconstitutional. Here, it's not exactly guilt or innocence, but it's mitigation, right? That's correct, Your Honor. And in that case, like every other, well, I guess that's not specifically a critical stage case, but in every Sixth Amendment case where we're talking about the total deprivation, that's a short portion of the trial where he was deprived of counsel. The entire trial is a critical stage. Here, the entire proceeding is clearly a critical stage. He was deprived of counsel during one portion of that. It happens to be the most important part of that hearing. Counsel, let me come back to Judge St. Eve's question. I mean, you've said several times that this is clearly a critical stage. What decision of the Supreme Court clearly establishes that this is a critical stage? Well, I'll start with Hamilton. Hamilton holds that a critical stage. Didn't involve an ex parte meeting with a judge. That is correct. Is there any time the Supreme Court has ever considered whether an ex parte meeting with a judge is a critical stage? No, the Supreme Court has never considered these facts. Is that required under AEDPA? The Supreme Court in Williams against Taylor said that there can be new situations where it can be unreasonable for a state court to fail to apply a rule to that new situation. That's correct. And the Supreme Court in Williams also said that the contrary two-prong of 2254-D1 is intended for situations where there are materially indistinguishable facts. The unreasonable application is for new, unusual facts that clearly bind. It has to be an unreasonable application of clearly established law. Yes. That's why I'm looking for where the law was clearly established. You seem to be aiming at a very high level of generality where the Supreme Court has clearly established the doctrine that lawyers have to be representing their clients at critical stages. The question is where is it clearly established that anything like this is indeed a critical stage? Again, I'm going to point to Hamilton, but also all the consistent critical stage cases. It's not a high level of generality of you need a lawyer at a critical stage. It's a critical stage is any proceeding that occurs during the criminal prosecution where the defendant is facing the legal process or his adversary, and there's the potential for prejudice. And I'll point the court to Strickland. The Supreme Court defines that in Ashe. They say is confrontation with counsel at trial going to be a substitute for counsel at the pretrial confrontation? Oftentimes the answer is yes, as it was in Ashe itself. But that's the functional test. Right. And I'm starting with Hamilton, but I'm not relying solely on Hamilton, because the cases are really quite consistent, and Ashe is a great case to rely on. But if you look at Strickland v. Washington, this court on multiple occasions has granted habeas relief under that case, including and most usually in cases not involving a lawyer's failure to investigate, mitigating evidence related to the penalty phase of a death penalty case. Those were the facts of Strickland. But Strickland did clearly establish a legal standard, and in other situations where the lawyer performs deficiently and the defendant is prejudiced, as long as the circumstances are clear that it was deficient performance and prejudice, it meets that Strickland standard beyond the Strickland facts. So I'm going to point out that your time is waning, if you would like to save some for rebuttal. I would like to save some for rebuttal. Thank you, Your Honor. Certainly. Mr. Walsh. May it please the Court. Ryan Walsh on behalf of the State of Wisconsin. I'd like to begin with the Supreme Court decisions that my friend did not address, namely the 35 cases decided in just the last 13 years in which the Supreme Court has summarily reversed, often unanimously, grants of federal habeas relief under AEDPA, including in three critical stage cases. You know, Mr. Walsh, we know that the Supreme Court does that, but it doesn't relieve us of our obligation to look at this case. I'm wondering how far you're going to take this principle. So suppose there's a case with an alibi defense, and the judge decides, well, I'm not going to bother to do this in front of the jury. I'm just going to have an ex parte hearing in my chambers. Do you think that that would be something that's so deviated from principles of due process that it would be permissible for a state judge to do that? Regarding the second issue in the case? The alibi. Yeah, as I see this, there's only one substantive issue in this case that mattered to Mr. Schmidt, which was whether adequate provocation could go before the jury, because that would have taken his maximum sentence down to 60 years instead of life without parole. So if the state of Wisconsin thinks that it's fine for a judge to remove that issue from a jury's consideration, what about an alibi defense? What about a mental capacity defense? What about a motion in limine? Can it all just, whenever the state feels like it, go out of the courtroom into the judge's chambers and away from the jury? Your Honor is asking about the second question in the case, which counsel on the other side has abandoned, but I'll address it anyway. I don't know that they have abandoned. I looked pretty carefully. It's in all of the briefs. Well, the argument here on the second issue is whether it was a due process violation for the ex parte hearing to be conducted in the way that it was. The argument below is whether it violated due process to subject this defense to some evidence standard. The question that you're asking about has been totally forfeited. But no, it's a state. I contest that because I've looked throughout. It was raised everywhere. But anyway, I just, it's striking to me to think that one, I'll tie it back to counsel, that one can just remove an issue from the trial and deprive the person of the right to counsel, tell the counsel he's got to stand there and say nothing during this odd procedure that the state judge decided to engage in. And, you know, that way you could actually deprive people of the right to counsel for anything important. You could see a tricky issue coming up in the trial and say, oh, now time to go to the judge's chambers and tell counsel to be quiet. No one is disputing in this case that it is entirely appropriate for the state of Wisconsin to impose a burden of production on defendants who want to raise certain evidence at trial. After all, we don't want irrelevant evidence presented, certainly not evidence that would prejudice the jury. So the judge was in a difficult position here. The judge had to figure out how to handle the legal argument over adequate provocation before the jury trial. So it's hard to be a judge. The judge had before him a statement of all of these witnesses who were going to testify, and the judge was aware that Mr. Schmidt was going to testify. The judge could have ruled, yes, this statement is enough, no, this statement isn't enough, but then there would have been a clean legal ruling. We didn't get that. We had Mr. Schmidt, who obviously didn't have the faintest idea what state of mind meant, instead talking in an uncounseled way before the judge. It's just a shocking procedure, and what worries me about this case, I envision Wisconsin courts just kind of avoiding the adversary procedure altogether from now on. No, Your Honors. So a few things. First, this goes to prejudice. The question is, under critical stage doctrine, whether there is a substantial risk of prejudice to Schmidt. Here, there was no risk of substantial prejudice, not only because there had been 37 pages of mostly single-space briefs on this question, which included a five-page chronicling of events from 2004 until the crime, which included a list of 29 witnesses which would speak to the defense, but also because this hearing addressed – And that somehow is not enough to get – I mean, I accept Wisconsin law. Wisconsin law is very strict. That's not enough to put it in front of a jury. The problem was, and I'm glad you're asking about this, Your Honor, there is a temptation to think in hindsight that this hearing in chambers was the be-all, end-all for Schmidt's defense. That is not true. The context shows that the hearing was to address whether Schmidt could meet the subjective elements of the defense. It turns out that wasn't even a seriously contested question, and this is according to Schmidt and Schmidt's counsel himself, by the way. The hearing and the reason to hear from Schmidt was to show that he could meet the subjective elements. But it turns out the subjective elements had nothing to do with why the trial court denied his ability to raise this defense. It certainly wasn't the basis of the court of appeals decision. Indeed, the state even conceded it. Do we know, counsel, do we know why the district – why the trial judge denied the motion? We do. He says in the denial of the motion for new trial that Schmidt failed to show a reasonable adequate – After trial, okay. I'm sorry. Go ahead, thanks. Yes, yeah, the trial judge says it in that order, and in the court of appeals the state even concedes. He has met the subjective elements of the defense. The problem is he couldn't show adequate provocation, which is a legal question. This hearing did not concern that question. So in Wisconsin, then, I guess what you're saying to me is that that's a question only for the judge, that he will resolve disputed issues of fact about adequate provocation. The juries don't hear it. No, he was not – Is that Wisconsin law? He was determining whether Schmidt could carry his burden broadly on the question of adequate provocation. The way Schmidt's counsel had – The burden was just a burden of production, as I understand it, under Wisconsin law. And so I think what you're telling me is that Wisconsin law says that this is not something for the jury at all, that this is a question for the judge. No, that's not true. Schmidt's burden was to meet both the objective and subjective elements, or at least show that he could carry his burden on the objective and subjective elements of the defense. Is it that, or is it just does he have to come up with – I don't want to get off on Wisconsin law. What concerns me is that as this interrogation by the judge is going on in the ex parte thing, the lawyer is not able to explain to Mr. Schmidt what's being asked, what kinds of information, which might go to both the objective and the subjective elements. The lawyer can't – the lawyer is muzzled. The lawyer is not muzzled. Yes, he is. He's muzzled, and they take this little break when the judge says, you know, it's only going to be a minute. Don't say anything other than something pertaining to the list. The judge comes back. The lawyer's had no meaningful time. If I may explain, the court said that the attorney was not to participate. That could not have meant that the lawyer was not to perform any advisory function in connection with this hearing. Clearly what the lawyer thought the judge was saying. The lawyer didn't want to find himself in contempt. The lawyer is told by the judge you can't participate. I think the judge was trying to equalize the position of the prosecutor in the defense. Yes, what everyone envisioned is that this would not be a hearing where the attorney would be conducting a question and answer direct examination style presentation. The judge said Schmidt's attorney is present but not participating in the hearing. How much more clear can it be that this lawyer was essentially a potted plant? If that's what the judge literally meant, then how could you explain why the judge takes a break in the hearing explicitly to allow counsel and the client. Just take a phone call. It was just to take a phone call, please. I'm troubled by the prosecution's request about how this is going to be handled. It fits exactly with what Chief Judge Wood and Judge Rovner have pointed out, where the prosecutor says I don't want there being opportunities for them to confer and to discuss what he wants to say or not say on questions the court may have, but just to be there with no objections. So what you're getting from the prosecutor as well as the judge is lawyer's a potted plant and can't even talk to his client privately off the record. In fact, even during the phone call, the judge instructs the lawyer not to talk to his client about anything except the written offer, which is already there. Yes, and the hearing concerns solely whether the written offer and the defendant's testimony could show the subjective elements. And the defendant's testimony. So the judge is saying you can't talk to your client about what he's just been saying. The judge let him talk to his client about what he had just been saying. No, he did not. He said restrict your discussion to the review of the written offer of proof. But he's speaking solely on the basis of his offer of proof. Schmitt's counsel had already submitted Schmitt's statement to the police, which contains virtually all of the same points that Schmitt makes in this hearing, in an unsealed submission to the court on February 5th. I'll grant that if the lawyer had been involved, it might have been a slightly more polished presentation, but consider that it's been seven years and we've had five briefs on this issue and we still don't know what additional or different facts Schmitt would have included if he had been allowed his attorney to point him in the right direction or to lead the questioning. We still don't know. That's because there's no need to show actual prejudice. There is not under a chronic claim, but there is a question of prejudice to determine whether a stage is critical. Both the majority and the panel dissent agreed on this. We want to know that whether if the attorney had been provided, whether the attorney could have helped the client avoid prejudice. And what I'm suggesting is that we still have no indication of how this proceeding would have gone any differently if the attorney had been allowed to lead by asking questions of the client. The other side says, well, maybe take a look at the trial transcript to see how that went. Well, that was a cleaner presentation. I'll grant that, but it's all the same facts. It's all the same facts about Schmitt's troubled marital relationship, his worries about the kids. It's the same presentation. Mr. Walsh, in response to Judge Wood's question about substantial prejudice here, you said that he wasn't substantially prejudiced because his lawyer was able to submit the offer of proof and a lot of briefing, but isn't that a question really for the effectiveness of counsel as opposed to the substantial prejudice at the critical inquiry stage or the critical stage? Yeah, I think it bears on both. Both are independent reasons to affirm, but it bears on both. So let me move to whether there has been a complete denial of counsel because even if this court concludes that this was a clearly established critical stage, fair-minded judges could differ over whether there had been a complete denial of counsel here. How do you get around Ferguson on that second question, whether or not there was a complete denial of counsel? Ferguson involved a defendant standing before a jury. Totally different from a defendant standing in front of a judge whose obligation is to separate the wheat from the chaff and who was perfectly able to do that in this case. Wright v. Van Patten is an interesting case. The facts in that case are quite similar to this one, but far more extreme. In Wright v. Van Patten, the attorney had been entirely absent from a plea hearing, entirely absent. He calls in by phone and participates by speakerphone. A panel of this court said that's a clearly established violation of the client's right to assistance of counsel. After all, the client had no right to meaningfully confer before the hearing, during the hearing. Substantial issues were at stake. The Supreme Court summarily reversed, saying there is no case clearly on point, establishing that that constituted a complete denial of counsel because there was at least the possibility of conferring before the hearing and some possibility of conferring during the hearing. If that wasn't a violation— But it hadn't been forbidden. That's the difference. It hadn't been forbidden. Your position seems to be that the lawyer should just disregard instructions from the judge. Not at all. The lawyer—the instructions— But that's a difference with Wright. And I think in Wright, the court is also maybe thinking ahead. There are technological innovations. If the states are willing to do it, maybe that's fine. All of that's fine. But there are these structural problems. And then if you look at all these PCs that you were talking about, where the Supreme Court reverses courts of appeals, they almost always involve evaluations of evidence, evaluations of credibility, evaluations of, you know, is somebody really adamantly opposed to the death penalty or not? This is not that kind of case. This is a judge taking an issue out of the trial, refusing to let counsel perform his role for that issue, and then sending the defendant back into a truncated trial. Two points, Your Honor. First, Your Honor pointed out a difference, but that difference doesn't matter under chronic. Chronic's conclusive presumption of prejudice applies no matter what the source of the complete denial of counsel is. It could be the attorney himself or herself, or it could be the government. Now, the second point is I would point your honors to Wade. Wade is a case involving not just any old proceeding between arraignment and appeal. Wade involved testimony from a government witness implicating the defendant on a theory of aiding and abetting felony murder. The attorney is gone for 17 minutes of the attorney's presentation, and the court of appeals said this was a clearly established violation. Again, the Supreme Court reverses on the ground that although this evidence was in trial, which seems pretty clearly established, it wasn't clearly established that this constituted a complete denial of counsel because counsel was only gone for a little bit, and this evidence wasn't particularly important. So I would suggest that the level of generality at which Your Honor is assuming is appropriate with your question is not the level of generality that the Supreme Court has suggested is appropriate. Mr. Walsh, can I ask you a question? Could his counsel have called off the hearing at any point? I mean given that this hearing was done to accommodate Schmidt, counsel was there. Counsel had been instructed not to participate, but could counsel if counsel really thought things were going south had said, Your Honor, I'd like to stop this. We can invite the prosecutor in the room. We can do it differently. I mean would that level of participation you think have been permitted? Yes. One advantage to being present. What evidence in this record do you rely on when you give your answer to Judge Barrett? I don't see a word from the judge inviting that kind of option. It wasn't forbidden. It wasn't explicitly invited, but counsel was permitted to be there, and one of the benefits of physical presence in a hearing such as that is the ability to pull the fire alarm, so to speak, to stand up and say, Your Honor, this proceeding is not going as I envisioned, or frankly, my client is not performing as well as I would like. Wasn't this the same judge that was going to be the judge? You have a lot of courage if you think that that works with a lot of judges. Right, and also, you know, you're sliding over some facts that are not so great for you. Maybe that's fine. The court says Schmidt's counsel would, quote, just be present, and here's why I wonder about your answer to Judge Barrett, not saying anything. Now, not saying anything doesn't sound to me like saying something. Speaking up to call off the hearing, speaking up to say, Can I have a few minutes to confer with my client, speaking up in any way, not saying anything. Maybe I'm a very literal person, but talk about levels of generality. I don't think not saying anything is too hard. And what I'm suggesting is the context shows. You think the court didn't really mean not saying anything when he said not saying anything? Well, he couldn't have meant it literally. I'm going to speak up. The judge could not have meant it literally because the attorney got to say something to his client and got to review the offer of proof. The attorney also got. Only when the judge takes the phone call, when the judge himself has said, You can talk to your client, but not about what we've been doing, only about the offer of proof. Well, I respectfully disagree that it was not about what they were doing. It was about the only thing they were doing. And by the way, lest it get lost. So are you not distinguishing between the written. I guess that's right. You're just amalgamating the written offer of proof with every word that came out of Mr. Schmidt's mouth. No, I'm not. I'm not equating the two. I think the testimony was an opportunity to amplify and to focus on things that had already been submitted in the written offer of proof, things that included a statement from him. You agree they were different and that the lawyer is told you can talk about the written version but not the oral elaboration, if you want to call it that. The oral elaboration, I think everyone would agree, was to track the written offer of proof, to elaborate on points, maybe answer questions about and to fill in the gaps if the judge had questions. But this was, in counsel's mind, this wasn't even necessary because counsel thought he had submitted everything necessary to show that he could carry his burden. So, no, I think the offer of proof in the hearing is certainly going to track the offer of proof in writing. Mr. Walsh, if we were to conclude that, look, there's been some slight deprivation of his right to counsel at the in-camera hearing for a lot of the reasons that Judge Wood is embodying in her questioning, that doesn't mean you lose, does it? Because why couldn't you read the Wisconsin Court of Appeals' opinion to emphasize, as you do in part of your argument, that Mr. Schmidt had multiple other opportunities at what may have been this critical stage and those were counseled opportunities to make his showing on the adequate provocation defense. Don't we have to conclude that that would be an unreasonable application of settled law? You're exactly right, Your Honor, that the question was whether he could carry his burden on the defense. On that question, he submitted 37 pages of briefing, an extensive offer of proof. I know that. I know that. But what occurred, if we just want to focus on the in-camera hearing, it seems to me that it's just almost indisputable. There was a slight deprivation, if not more than that, of his right to counsel. Counsel just did not participate to the degree that the defendant would have benefited from or could have benefited from. Yes, and what I'm saying is that if a similar deprivation in Wright v. Van Patten didn't constitute complete denial of counsel, then a fortiori this much more limited deprivation of counsel did not constitute a violation of clearly established Sixth Amendment law in this case. I think even Estelle is a good illustration of how this inquiry works. In Estelle, as Judge Barrett pointed out earlier, the critical stage was the conversation between the client and the psychiatrist. The psychiatrist, who would be determining some pretty important facts in the case. And the psychiatrist stood for the court. The psychiatrist was not an adversarial witness engaged by the prosecutor or engaged by the defense. He was a court-appointed. I disagree, Your Honor. Page 467, Estelle says that the psychiatrist is an agent of the government, agent of the state. They put the government puts him on, but he's a court-appointed psychiatrist. The Supreme Court refers to him as a neutral more than once. Yes, that's true. The Supreme Court also refers to him as an agent of the government. And his testimony is admitted against the defendant over the defendant's objection to prove future dangerousness, which leads to his receiving the death penalty in the case. But the important point is that the conversation, everyone agrees in Estelle. That he's a neutral, that there's nothing inconsistent with being a neutral for that to happen. The defendant doesn't have to love a neutral. The important point is that everyone recognizes the conversation with the psychiatrist is the important stage. And the Supreme Court holds it's the critical stage. But it doesn't follow from the court's conclusion that you get counsel at the interview with the psychiatrist. If the trial is going to provide an adequate corrective to whatever missing counsel may have been at this earlier stage, then Ash says, then it's not critical. Then you can use this other opportunity for confrontation, for cross-examination. What's different about this is this takes the issue off the table altogether. The court takes a central issue in the case and removes it from the trial. I understand that Your Honor perceives a clear error here, but clear error is not enough. A fair-minded judge could conclude. None of us who have been on the court since 1996 is under the slightest illusion that clear error is enough. Grotesque, awful, glaring, whatever word you want to use, I know is the standard. This case strikes me as, as I say, I just hope this doesn't represent how the Wisconsin courts are going to do business in the future. Your Honor referred earlier to Williams v. Taylor. I would point out that the language that Your Honor is referring to in Williams v. Taylor about courts unreasonably failing to extend rules to new contexts is no longer good law in light of White v. Woodall. White v. Woodall said that is not what we mean. In fact, in Williams, they simply quoted the Fourth Circuit without even endorsing that logic. But there's a difference between clear error, of course, and reasonable error. This court itself, along with four other sister circuits, have concluded that a hearing is not a critical stage unless it involves an adversarial confrontation. Judge Kaney wrote an opinion for this court in Jackson, which many courts have called the leading opinion on this issue. Not only that, in virtually every Supreme Court decision on critical stage— So I think something adversarial. Is there any sorting function? In antitrust, I would call it the characterization phase. So a court could say, we now think alibi defenses are not a critical thing, so we're not going to handle alibi in the adversarial process. Or could a court say, we don't think that mental capacity is something that we would like to handle in the adversarial process, so we're going to have that just be an ex parte judicial. Are there any limits on a court's ability to define what's adversarial? Chambers holds that states cannot remove complete defenses entirely from the defendant. So there are due process limitations. The Chambers argument has been abandoned, and it wouldn't hold water in this court anyway, I would submit. But that's a different question from whether there had been a constitutional deprivation of counsel at critical stage. That's fine. I'm just trying to define the critical stage, because then we can zero in on what happened with counsel. And you can't avoid talking about the allocation between the trial and other phases, whether it's in Chambers discussions, or whether it's pretrial motions, or whether it's lineups, or whatever it may be. So I think you can't get away from the characterization, because you need to get to the point of saying it either is or is not something that's part of the adversarial process. And then if there's no counsel functioning, then you have a chronic problem. I would submit that Wade is helpful here. Wade involves certainly an aspect of the adversarial process. I'm sorry, Ash. Wade involved the pretrial lineup, which involved the defendant in an adversarial confrontation. Wade involves no confrontation whatsoever, because at the post-indictment photo array, the defendant himself is not even present. So the court says it would be to create a confrontation. You're absolutely right. But that's where the court then says the structure of Wade makes it clear that the test isn't useful. It's a tester to determine whether confrontation with counsel at trial can serve as a substitute for counsel at the pretrial confrontation. And if the pretrial confrontation finally decides a central issue in the case, then counsel at trial isn't going to be permitted to go into that point. The brief in-chambers hearing did not settle an extremely important, closely disputed question in this case. The government conceded that Schmidt could show the subjective elements of the defense, clearly conceded it on appeal. This was not as important as hindsight would lead us to think it was. That doesn't go to the question of whether it was adversarial or not, then. That goes to the question about whether there was a substantial risk of prejudice. That's right, Your Honor. How should we best read the state court of appeals decision on the critical stage test, the two aspects of it? Is it really a ruling on whether this was adversarial in the sense of the defendant confronting an agent of the state, which is the sense that it's meant in this context, or is it a ruling that there was such an insubstantial risk of prejudice because of everything that had preceded and came after this unusual proceeding made it nearly supplementary? I think it was a ruling on both. The lack of the adversarial confrontation is evident because although this was a slice of a question relevant to the defense, the broader question of whether Schmidt could show adequate provocation was fully argued in an earlier hearing on January 19th and was fully briefed. Isn't it safe to say, though, Mr. Walsh, that with that full presentation, with everybody present, that wasn't sufficient to convince the judge, was it? It was not sufficient to convince... The judge felt he needed to have this face-to-face dialogue with the defendant, correct? This goes to an oddity in... Is that correct? Is that correct? The judge felt that it would be appropriate to have a full hearing on the legal defense generally, but there was a shift in expectations that I think is clearly attributable to defense counsel. Let me explain why. On the January... Is it also clear that after this hearing, the judge immediately ruled that the defense had not been sustained, that the burden had not been shown, and that when the defense later tried to revisit the issue, the judge refused? I think that can all be explained. Is that correct? Then you can explain it. Yes, that's correct. Thank you. There was an opportunity with one caveat. I think there was an opportunity to supplement the record that day, but here's why this preceded that... Where do you find that opportunity? In the January 19th hearing. The judge says, on February 10th, we're going to have a hearing. At that hearing, you can present as many witnesses from your list of 29 as you want. You might even be able to submit affidavits, and we're going to have it out on the adequate provocation defense and whether you've carried your burden. At the February 10th hearing, the judge starts by saying, okay, I think I've figured out a solution to avoiding the Fifth Amendment issues that Schmitt is worrying about in regards to his own testimony. We will handle that in this specific way. For some reason that's not known to me, Schmitt did not put on the full presentation he was entitled to. Instead, he rested entirely on the basis of his own testimony, which he said in briefing and which he said in the hearing was all that he needed to show the subjective element. I don't know why he didn't do the more... The court instead interjects this weird procedure. And so at the end of the weird procedure, the judge denies the motion, so the hearing that you're talking about never happens. And I would submit that was because counsel's own choice, and this isn't a Strickland claim. Here's what counsel says. I mean, how many times is a lawyer supposed to nag the judge? This is at 24-2 at 4-09. Schmitt's counsel says, to establish the subjective belief of my client, dot, dot, dot, we decided that that would be better done by an in-camera inspection of my client. He puts his client on the stand. He presents no other witnesses. He seems to think that his other witnesses wouldn't be able to participate, but I don't know where he gets that from the court's explanation on January 19th of what this hearing was going to be for. I see that. Would the outcome be different, Mr. Walsh, if this testimonial offer of proof without counsel had occurred during trial? I don't think the outcome would have been different. I mentioned earlier that defense counsel has said that to get a sense of what Schmitt would have said if his attorney had been able to point him in the right direction, take a look at his testimony at trial. But I don't see material differences. He gives the same history of his marital strife, of his worries about his kid's future. But the judge is not instructed on the second-degree offense because the judge has taken that off the table. So he can say whatever he wants to at trial, but it's not going to change the offense of conviction. There was a lesser-included offense included in the instructions. But what I'm saying is that at trial, the same facts presumably would have been presented. And not only that, there would have been an opportunity for the prosecutor to cross-examine, obviously. So it might have even gone worse for Schmitt at trial than it did at this pretrial hearing. Of course he's going to have to be subject to cross-examination. Just one quick question. In the district court, the state indicated that an appropriate remedy here, if a writ is issued, would simply be to resentence rather than to retry. Is that still the state's position? Yes, we stated that in the brief. Okay. Thank you. Thank you, Your Honors. Thank you very much, Mr. Walsh. Anything further? Ms. Fite. Thank you. I want to start by addressing Judge Sykes' point, which also goes to your point, Judge Wood, earlier. Sort of what can a judge remove from the normal adversarial process if it wants to take it back into chambers? And you had asked what happens if this happens during trial. And you can actually imagine that if the judge had, rather than holding this pretrial hearing, perhaps he waits until the jury is impaneled, he's trying to decide what's going to come in in trial, takes Mr. Schmidt back into chambers, questions him then, or waits until the end of the state's case. And that's not at all uncommon with these affirmative defenses. Correct. I mean, it would be uncommon for him to take the person back into chambers without defense counsel participating. But right. But deferring the issue until trial is not uncommon is my point. Exactly. And I feel like if it had happened at trial, perhaps the state wouldn't even be making this argument because it would be so patently obvious that it's a critical stage. But, in fact, it's the exact same thing happening. It just happens to occur before trial. And there was quite a bit of discussion during my friend's argument about whether there's substantial prejudice. And so I just want to reiterate that we are talking about the potential for prejudice. And, again, the potential for prejudice was profound, both in terms of the evidentiary issue at hand and in terms of the judge presiding over the trial and sentencing having a personal conversation with the defendant about killing his wife. There was Van Patten, and I think it was Woods that he was talking about. He referred to Wade. Those are two cases that the Supreme Court reversed that were critical stage cases. So I want to be sure to distinguish those cases. Van Patten is really about form over function. There the lawyer was able to, or at least the Supreme Court found that it was not clear enough for AEDPA that the lawyer wasn't able to perform all of his duties as a lawyer just through a remote device into the court, which is completely different from here where it's the function of counsel that was impacted. He was not able to act as his client's assistant, advocate, counselor. And then in Woods, the situation was where some evidence that was related only to a co-defendant's case was being presented at trial. And so there it was. Wasn't there an aiding and abetting theory in that case in Woods that could have impacted the defendant? That was the defense argument, but the court said it was not clear enough that there was anything the lawyer could have done. So, again, it's sort of a potential for prejudice. It wasn't clear enough for AEDPA what the lawyer could have done to help the defendant. That's what I want to go back to prejudice for a moment. So what is clear about what counsel could have done if he were present? Well, not present, but had the opportunity to. What can we point to? In Woods, you've accurately described why the absence for a short period of time allegedly didn't impact. Here, I'm still struggling a little bit to frame what the counsel would do in this given situation. I understand writing on a clean slate. This procedure is troubling. I share Judge Woods' concerns about that just as an abstract matter. But here, I'm focusing on prejudice, and I'm struggling a little bit. Unless you speak to the generality of any absence of counsel at any time, it has what you call potential for prejudice. I appreciate that argument about potential for prejudice. I guess that's a given in any situation with the absence of counsel. But could you give me something here where you feel it would have been tailored in some way, refined in some way, by having counsel interject, assuming he was permitted to, to make this case for the defendant? The first response to that case is to point to Ferguson v. Georgia because the Supreme Court made it so clear in that case. But really, I mean, the counsel should have done what we are trained to do as defense counsels, which is use our questioning to focus on the legal standard and to frame our client's narrative. So we are acting as an advocate as we are questioning him. That had been established, had it not, through prior pleadings. I mean, the submission of the witness list and the description of the argument that had been made earlier. But there certainly wasn't all the additional information that came in during the in-camera proceedings through the series of open-ended questions, and there wasn't the opportunity for the attorney to focus on the questions that mattered. And there also wasn't the opportunity to do the other things that attorneys do at evidentiary hearings, to, you know, object to questions, or even at the end, once the evidence came in, to make arguments to the judge about how he should interpret and understand that evidence. All right. I think your time is up. Thank you, Your Honor. So we thank you very much. We thank counsel for the state as well. The court will take this case under advisement, and we will take a brief recess.